# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:20-cv-0010 |
| | ) |
| DONNA ROBERTS, DELSA CHRISTIAN, LEE CHRISTIAN, LUCILLE ROBERTS FRANCIS, SEKOU MARGRAS, JESSICA MARGRAS-PARRIS, EDWIN ROBERTS, JEAN MARGRAS, AND UNNAMED DEFENDANTS, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**APPEARANCES:**

**DELIA L. SMITH, UNITED STATES ATTORNEY**
**ANGELA TYSON-FLOYD, ASSISTANT UNITED STATES ATTORNEY**
**KIMBERLY L. COLE, ASSISTANT UNITED STATES ATTORNEY**
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, U.S. VIRGIN ISLANDS
 *FOR THE UNITED STATES OF AMERICA*

**JOSEPH CAINES, ESQ.**
LAW OFFICES OF JOSEPH CAINES
ST. THOMAS, U.S. VIRGIN ISLANDS
 *FOR DEFENDANTS DONNA ROBERTS, DELSA CHRISTIAN, LEE CHRISTIAN, LUCILE ROBERTS FRANCIS, SEKOU MARGRAS, JESSICA MARGRAS-PARRIS, EDWIN ROBERTS, JEAN MARGRAS*

## MEMORANDUM OPINION

**Robert A. Molloy, Chief Judge**

  **BEFORE THE COURT** is Defendants Donna Roberts, Delsa Christian, Lee Christian, Lucille Roberts Francis, Sekou Margras, Jessica Margras-Parris, Edwin Roberts, Jean Margras, and Unnamed Defendants' ("Defendants") Daubert Motion to Preclude Camilla Jensen from Testifying as an Expert Witness. (ECF No. 85.) For the reasons stated below, the Court finds

that Camilla Jensen is qualified to testify as an expert witness and will, therefore, deny the Defendants' motion accordingly.[1]

## I. FACTUAL BACKGROUND

This case arose from a property dispute between the United States ("Government") and the Defendants, who both claim to be the rightful owners of Parcel No. 5A Estate Bordeaux in St. John, U.S. Virgin Islands. *See* ECF No. 1 and ECF No. 123. On January 30, 2020, the Government filed a Complaint bringing, *inter alia*, an action to recover possession of the said property. To prove the Government's lawful ownership of the property in question and to establish a prima facie case, the Government intends to rely on a collection of land register records dating back to Danish rule over the Virgin Islands. (ECF No. 93.)[2] These documents, however, are all written in Danish, specifically Danish Gothic Script. *See id*. As such, the trier of fact is unable to understand these records in their present form. Accordingly, the Government plans to have Camilla Jensen serve as an expert witness to translate and transcribe the documents from Danish to English.

The Government contends Camilla Jensen is qualified to provide expert testimony. The Government asserts that Jensen is fluent in both English and Danish and received her formal education in Denmark, where she eventually completed two years of language studies. Additionally, during Jensen's professional career, she has served as a Danish teacher in Denmark, and since 2003, has been working for the Virgin Islands History Associates ("VISHA"), where her role is to translate and transcribe 18th-19th century Virgin Islands documents from Danish Gothic Script to English.

---

[1] The Court does not believe a *Daubert* hearing on the admissibility of Camilla Jensen's testimony is necessary. Prior to the Court's decision today, the parties briefed the issue in detail, and the Court heard additional arguments during a status conference held on September 6, 2023. During the status conference, the Court specifically inquired into whether a *Daubert* hearing was necessary regarding the admissibility of Camilla Jensen's testimony. Neither party indicated that a hearing was needed at this juncture. Moreover, the parties made no indication that the factual record was incomplete or that additional information still needed to be presented. Therefore, because the Court is satisfied that the factual record is complete and the methods implemented by the proposed expert are relatively simple, the Court will use its discretion and decide the instant motion without the benefit of a *Daubert* hearing. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 745 (3d Cir. 2000) (noting that the decision whether to grant a *Daubert* hearing is reviewed for "abuse of discretion.") (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142, 152 (1999)).

[2] According to the Government, these land register records are known as "Matrikler or Matriculs." (ECF No. 93.)

Despite Jensen's credentials and experience, on March 23, 2022, the Defendants filed the instant motion to exclude Jensen's expert testimony because they contend that: (1) Jensen does not qualify as an expert witness, (2) her testimony is unreliable, and (3) her testimony does not "fit" the instant proceedings. *See* ECF No. 85. Defendants assert that "Ms. Jensen is not an expert by training, skills, special knowledge, or education." The Defendants also emphasize that Jensen has no formal training or certification in the transcription of Danish Gothic Script, nor has she been certified to testify in any court as an expert of Danish Gothic Script.

As to the lack of reliability, the Defendants allege that Jensen's method of translation and transcription are unreliable because her process is not generally accepted and lacks a testable hypothesis. The Defendants further highlight that Jensen's "method" has not been subject to peer review, and she is unable to provide an error rate for her method of transcription.

Lastly, Defendants maintain that Jensen's testimony does not fit the case because the proposed testimony is both subjective and speculative. Moreover, the Defendants argue that translating these records will not be helpful because the land registers potentially do not contain a comprehensive list of all the people who owned property on St. John when those records were created. Because of the lack of certainty regarding what may or may not be missing from the land registry, the Defendants claim Jensen's proposed expert testimony will not help the trier of fact ultimately resolve whether the United States has a clean chain of title.

After thoroughly considering each of the Defendants' arguments, the Court finds that the contentions do not warrant excluding Camilla Jensen's proposed expert testimony.

## II.  DISCUSSION

Pursuant to Rule 702 of the Federal Rules of Evidence, a "qualified" witness may be permitted to provide expert testimony where the witness' "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. . .." Fed. R. Evid. 702. Rule 702 is generally broken down into three requirements. In order for a party to present expert testimony, the proposed expert (1) must be qualified, (2) the testimony must

be reliable, and (3) the testimony must "fit" the case. *See Pineda v. Ford*, 520 F.3d 237, 244, 247 (3d Cir. 2008). The Court will address each of these requirements in turn.

### A. The Expert is Qualified

The Court is given significant discretion to determine whether a witness is qualified to provide expert testimony. *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) ("We apply an abuse-of-discretion standard when reviewing a District Court's decision to admit or exclude expert testimony.") (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also United States v. Garcia*, 7 F.3d 885, 889 (9th Cir.1993) ("The determination whether an expert witness has sufficient qualifications to testify is a matter within the district court's discretion."). Not only are trial courts given broad discretion during the expert qualification analysis, but judges are also encouraged to construe the term qualified witness "liberally" given the Rules of Evidence's "strong preference for admitting any evidence that may assist the trier of fact." *Pineda*, 520 F.3d at 243; *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997) ("If the expert meets liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility."); *see also In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 741 (3d Cir. 1994)

Therefore, when determining whether a particular witness is qualified to provide expert testimony, the district court is not expected to require the witness to satisfy an overly narrow list of qualifications. Instead, "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d. at 741. Accordingly, the witness need not possess certain certificates, credentials, educational prerequisites, or even be the most qualified individual in the field as long as the Court may reasonably conclude that the witness' proposed expert testimony is reliable and will assist the trier of fact. *See Waldorf v. Shuta*, 142 F.3d 601, 626 (3d Cir. 1998) ("an otherwise qualified witness is not disqualified merely because of a lack of academic training."); *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d at 741; *see also United States v. Gutierrez*, 757 F.3d 785, 788 (8th Cir. 2014) (noting Rule 702 "does not require any particular imprimatur"); *United States v. Muro*, 784 F. App'x 160, 162 (4th Cir. 2019) ("[t]he lack of formal certification by a professional organization—although relevant to her expertise is not dispositive.).

In light of this deferential standard, the Court finds that Camilla Jensen is qualified to serve as an expert translator and transcriber of Danish Gothic Script. Not only is she fluent in Danish and well versed in Danish Gothic Script, but Jensen's job for the past twenty years has required her to translate and transcribe Danish Gothic Script into English—the same task the Government has asked Jensen to do in this case. *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) ("The basis of this specialized knowledge 'can be practical experience as well as academic training and credentials.'") (quoting *American Tech. Resources v. United States*, 893 F.2d 651, 656 (3d Cir.1990) (citing *Hammond v. International Harvester Co.*, 691 F.2d 646 (3d Cir.1982)). It is of no moment that Jensen may lack the credentials, degrees, or peer-reviewed publications the Defendants may expect from an "expert," especially given the lack of certifications and degrees available in the field of Danish Gothic Script.[3] *See Holbrooks v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996). The Court is more than satisfied that Jensen's experience and background are sufficient to provide a reliable translation and transcription of the documents in question in this case.[4]

### B. The Proposed Testimony is Reliable

The Defendants also challenge the reliability of Jensen's testimony. In making their argument, the Defendants essentially allege that Jensen's proposed testimony fails to satisfy any of the reliability factors set out in *Daubert*. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Most notably, the Defendants argue that Jensen's methods of translation and transcription are unproven, untestable, unmeasurable for error, not generally accepted, and have not been subject to peer review.

The Defendants, however, place undue emphasis on the specific reliability factors identified in *Daubert*. The factors the *Daubert* Court recommended trial judges consider

---

[3] To the extent that universities even offer paleography courses at all, let alone courses in Danish Gothic Script, many courses are only a few days long and are intended merely to provide tips and common abbreviations and phrases used during the period the manuscripts under review were created. *See, e.g.*, Rare Book School: Courses, https://rarebookschool.org/courses/ (last accessed Sept. 12, 2023). Moreover, the Defendants do not suggest that one may receive a degree or formal certification in Danish Gothic Script.

[4] Other federal courts have found similar qualifications sufficient to allow a proposed expert to provide translation of materials in preparation for trial. *See, e.g.*, *United States v. Gutierrez*, 757 F.3d 785, 788 (8th Cir. 2014); *United States v. Zambrana*, 864 F.2d 494, 496 n. 2 (7th Cir. 1988); *United States v. Richards*, 48 F. App'x 353, 355–56 (2d Cir. 2002) (citing *United States v. Ben-Shimon*, 249 F.3d 98, 101-02 (2nd Cir. 2001)).

during the reliability analysis "are neither exhaustive nor applicable in every case." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 248 (3d Cir. 2008). As the Supreme Court later explained in *Kumho Tire*, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," and therefore should only consider the specific factors "where they are reasonable measures of the reliability of expert testimony." *Kumho Tire*, 526 U.S. at 152. Therefore, "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his [or her] testimony." *Id.* When the *Daubert* factors are not particularly pertinent or helpful, the Court may focus on the witnesses' personal knowledge or experience to assess reliability. *See Durando v. Trustee of Univ. Penn.*, 2022 WL 2467080, at *2 (E.D. Pa. July 6, 2022) (quoting *Kumho Tire Co.*, 526 U.S. 150); *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000) ("[T]here may be some circumstances where one's training and experience will provide an adequate foundation to admit an opinion and furnish the necessary reliability to allow a jury to consider it.").

      The *Daubert* factors do not seem particularly helpful for determining the reliability of Jensen's proposed testimony. The expert testimony at issue is translating and ultimately transcribing Danish land records. This relatively straightforward process does not involve a complex or sophisticated methodology.[5] Jensen simply considers the context, reads the Danish text, translates the words into English, and then proceeds to transcribe the translated words. The only reason Jensen's proposed testimony constitutes expert testimony is because the trier of fact, in this case, is not fluent in Danish. Therefore, to suggest Jensen's "methodology" of translation and transcription is unreliable or unproven is disingenuous.

---

[5] While paleography—the practice of deciphering historical manuscripts—may take time to master, as it requires a degree of familiarity with the writing conventions and abbreviations of the relevant historical period, a deeper understanding of those systems is generally achieved simply by spending more time with manuscripts from the relevant period. *See* Pavla Štorková and Jiří Kysela, *Tablet as a new interactive tool for education paleography*, 174 Prcedia-Soc. & Behav. Sci. 3164, 3167 (2015); Heather Froehlich, Marissa Nicosia, Christina Reihman-Murphy, *"Transcribing Recipe Manuscripts Online: V.b. 380 and the "What's in a Recipe?" Undergraduate Research Project at Penn State Abington,"* 8 Early Mod. Stud. J. 23, 25-27 (2022). Thus, to the extent that transcribing the documents, in this case, requires more skill than mere translation, Jensen has implemented the proscribed methodological approach by spending nearly a quarter of a century familiarizing herself with the manuscripts and writing conventions from the relevant period.

*United States v. Roberts et al.*
Case No. 3:20-cv-0010
Memorandum Opinion
Page 7 of 9

Jensen's approach is the same approach any transcriber would use in this situation. The lack of an alternative method is evidenced by the fact that Defendants do not suggest a sounder approach but, instead, seemingly attempt to suggest that transcriptions are inherently unreliable simply because each transcriber theoretically may produce a slightly different transcription. The Court will not entertain the notion that no individual is capable of providing expert transcription testimony, even of older forms of script, based on a theory that transcribing a foreign language is an inherently unreliable process.

The Court is also not concerned about the accuracy of the proposed transcription. The Defendants ask the Court to throw out the testimony simply because of the mere possibility that the transcription might not be accurate. Yet, Defendants make this claim without offering a single iota of evidence that the proposed transcription is, in fact, inaccurate.[6] The Court trusts that Jensen's twenty years of experience have given her the skills and knowledge to provide accurate transcriptions of the documents in question. Defendants could have proffered their own expert or an alternative transcription to show Jensen's transcriptions contained errors. But since the Defendants have failed to provide such evidence, or otherwise undermine the accuracy of Jensen's proposed transcription, the Court deems Jensen's proposed expert testimony reliable. Accordingly, any further questions regarding accuracy will go towards the weight of the evidence.[7]

### C. The Proposed Testimony "Fits" the Facts of the Case

As to the final issue, the Defendants challenge whether Camilla Jensen's testimony "fits" this case. The fitness requirement is a relatively easy bar to clear. Expert testimony

---

[6] The Court recognizes that it is the Government's burden here to demonstrate that Jensen's testimony is reliable. The Court believes that the Government has satisfied that burden by highlighting Jensen's background and experience and showing the straightforward method for producing the proposed transcriptions. This is why the Court has now shifted the onus on the Defendants to show why the Court should not rely on that dearth of experience in its reliability determination.

[7] To the extent that the *Daubert* factors are indeed relevant to the reliability inquiry here, the Court finds, alternatively, that Jensen's testimony would satisfy a liberal application of the *Daubert* factors to Jensen's testimony. Jensen's method is testable to the extent that other translators could review the document to determine whether they produce the same English translations. Her method of transcription is also generally accepted as Jensen's methodology is how paleographist are taught to transcribe manuscripts. Accordingly, even if it were necessary to satisfy at least some of the *Daubert* factors, Jensen's proposed testimony would do so.

satisfies the fitness requirement so long as the testimony "is sufficiently tied to the facts of the case [in such a way] that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir.1985)). In other words, as long as the proffered expert testimony "has the 'potential of assisting the trier of fact,' the testimony "fits." *See United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir.1997) (other citations omitted).

There is no question that Jensen's testimony is relevant to the case and will help the trier of fact resolve the underlying dispute. As the Government correctly indicated, to prove its case, most notably the action to recover possession claim, the United States must demonstrate that it is the lawful owner of the property. *See* ECF No. 1 and 28 V.I.C. § 281.[8] Since the Defendants are challenging the quality of the United States' title dating back more than one hundred years, the United States must necessarily prove it has a clean chain of title—including during the period of Danish governance over the territory. Consequently, this case will require the trier of fact to evaluate and understand documents written in Danish. Naturally, these documents must be transcribed into English in order for the proposed property records to be of any use to the trier of fact. Given the circumstances, the Court finds that Jensen's proposed testimony is relevant as it "will help the trier of fact to understand the evidence" and ultimately "determine a fact in issue." Therefore, Jensen's testimony satisfies the "fit" requirement.[9]

Notwithstanding these findings, the Court is concerned that Jensen's testimony potentially extends beyond mere translation and transcription of the matriculs and requires Jensen to testify beyond her expertise. The Defendants highlight excerpts wherein Jensen states that "[i]n 1855, both sets of Matrikler did not specify the owner of Estate Bordeaux. I

---

[8] "Any person who has a legal estate in real property, and a present right to the possession thereof, may recover such possession, with damages for withholding the same, by an action. Such action shall be commenced against the person in the actual possession of the property at the time…." 28 V.I.C. § 281.

[9] The Defendants also suggest that Jensen's testimony will not be useful to the Court during the bench trial because the documents she has transcribed may not accurately reflect who owned the property. However, the matriculs appear on their face to expressly indicate who owned the property listed during the recorded periods. As such, the Court is unconvinced that a translation of those records would not help the Court—the trier of fact in this case—to determine whether the United States has a clean chain of title to the property at issue.

attribute the blank space to a clerical error." ECF No. 85 at 8 (citing Jensen's expert report at 4). Jensen went on to say that "In 1788 John Nerkitt was presumably dead, because the entry for that year shows Widow Nerkitt recorded as Non-Plantation Owner," and "The household consist[s] of 1 free woman, presumably Widow Nerkitt herself, 3 free boys, 2 free girls, and 5 enslaved persons."

These above-mentioned inferences are not only speculative but fall beyond the scope of Jensen's area of expertise. The Government has proffered Jensen as an expert in the transcription of Danish Gothic Script. Jensen is not a historian, nor is she a sociologist. Therefore, Jensen may not infer what certain entries mean even if such estimations may be well-reasoned. In this case, her testimony is strictly limited to translating and transcribing the Danish documents the Government intends to introduce at trial.

To the extent that Jensen's proposed testimony goes beyond mere translation and enters the world of interpretation and historical analysis, such portions of Jensen's testimony are beyond the scope of her expertise for the purposes of this case. Accordingly, if the Government is unwilling to stipulate to introducing only the literal translation of the records, the Court will allow the Defendants to file a renewed motion seeking to exclude any portion of Jensen's proposed expert testimony that does not transcribe the records verbatim from Danish to English.

### III.    CONCLUSION

Thus, for the reasons stated, the Defendants' motion to exclude Camilla Jensen's testimony is denied without prejudice. An accompanying order of even date will follow.

**Dated:** September 14, 2023                    */s/ Robert A. Molloy*
                                                **ROBERT A. MOLLOY**
                                                **Chief Judge**